UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
TIMOTHY LYNCH, EDWARD WILLIAMS, and
LAWRENCE KOGEL, as Trustees and Fiduciaries of the     **REPORT AND**
TEAMSTERS LOCAL 1205 WELFARE FUND,     **RECOMMENDATION**
    CV 04-4170 (DRH) (WDW)

                      Plaintiffs,

     -against-

ICE-CAP, INC., and SIM-ONE, CORP., d/b/a SIM-
ONE/CLIMASTER d/b/a CLIMASTER,


                     Defendants,

----------------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

       This matter was referred to the undersigned by District Judge Hurley for the purpose of conducting an inquest and issuing a report and recommendation with respect to damages. By order dated March 7, 2005, plaintiffs, the trustees of the Teamsters Local 1205 Welfare Fund (the "Fund"), were directed to file papers in support of damages by May 2, 2005. On May 5, 2005, three days after the due date, counsel for plaintiffs submitted papers in support of their damages claim. There was no submission of papers or appearance by defendants Ice-Cap, Inc. ("Ice-Cap") and Sim-One Corp., d/b/a Sim-One/Climaster d/b/a Climaster ("Sim-One") (collectively, the "Company"), despite the March 7th order having been served on them. Based on the plaintiffs' submission dated May 5, 2005, the court recommends that a judgment be entered in the amount of **$1,070,633**.

       The procedural history of this case is as follows. Plaintiffs, the Fund, commenced this lawsuit by filing a summons and complaint on September 24, 2004. Defendant Sim-One was served on October 5, 2004 and defendant Ice-Cap was served on October 15, 2004. Defendants

failed to answer or move. Plaintiffs moved for a default judgment, and, on January 14, 2005, the Clerk of the Court certified defendants' default. Defendants did not respond to the motion for a default judgment, and by order dated January 19, 2005, Judge Hurley entered a default judgment.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.), *cert. denied*, 506 U.S. 1080 (1993). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Abramov*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

The complaint alleges that defendants failed to make fringe benefit contributions to the Funds as required by ERISA, the Trust Agreement establishing the Fund, and the applicable Collective Bargaining Agreements (the "Agreements"). Plaintiffs claim they should be awarded:

1. delinquent contributions owing to the Funds for the periods July 1, 1996 through June 30, 2003 and August 2003 through November 2004,[1] in the amount of $756,539.47;

2. interest at the rate of 10 percent per annum in the amount of $116,771.36, pursuant to the Agreements;

3. audit fees in the amount of $16,809.12, pursuant to 502(g)(2) of ERISA;

4. additional liquidated damages equal to 20 percent of the unpaid contributions

---

[1] It is unclear whether defendants made the required payments for the month of July 2003. In any event, these are the dates for which the plaintiffs are seeking damages.

amounting to $151,307.89,[2] pursuant to 29 U.S.C. § 1132 (g); and

5. reasonable attorneys' fees and costs incurred in the amount of $6,712.50 and $396.77 respectively, pursuant to 29 U.S.C. § 1132(g)(2)(D).

Plaintiffs introduced, as part of their submission on damages, two demand letters dated February 2, 2004 and February 25, 2004, respectively. The letters sent from the Fund to the Company covered the period from July 1, 1996 to January 31, 2004. Plaintiffs also included the declaration of Tzvia Feiertag, a former associate of the firm Cohen, Weiss, and Simon, LLP, detailing the amount of delinquent benefit contributions sought. Plaintiffs supplemented their claim by providing the audit report, pertinent pages of the Fund's Trust Agreement and the applicable Collective Bargaining Agreements, and contemporaneously maintained billing records. Based on the evidence submitted, plaintiffs adequately substantiated the amount of the claim, and the court accepts plaintiffs' allegation that defendants failed to make contributions for the relevant time period and determines the amount of those contributions to be $756,540.[3]

Plaintiffs claim that the Agreements and statute provide for the collection of interest on the unpaid contributions. The Agreements allow for the allocation of interest on the unpaid contributions at a rate of ten percent (10.00%) per year from the date when payment was due to the date when payment is made. *See* 5/5/05 O'Leary Decl., Ex. A, Amend. 4 to Agreement and Decl. of Trust of the Teamsters Local 1205 Welfare Fund at § 2. The interest on the unpaid

---

[2] Plaintiffs sought $217,322.98 in liquidated damages. Plaintiffs calculated that "20% of $756,539.47 is $217,322.98." 9/24/04 Feiertag Decl., at 8. The correct figure is $151,307.89.

[3] This rounded amount includes $182,315.77 for unpaid contributions as reflected in the Audit Report from July 1, 1996 through June 30, 2003, $562,271.45 in estimated contributions for November 2003 through November 2004, and $11,952.25 in shortages for August 2003 through October 2003.

contributions through December 31, 2004 totals $116,771.36.[4] The accruing daily interest thereafter totals $23,107.50[5] based on a per diem rate of $154.05[6] from January 1, 2005 through May 31, 2005 (X Days x $154.05). Thus, plaintiffs are entitled to 10.00% interest totaling $139,879.

Plaintiffs are also entitled to audit fees pursuant to the Agreements. The Agreements provide that the cost of the audit will be awarded "if such audit discloses the failure by an employer to make the required amount of contributions or to contribute for the requisite number of Employees." *See* 5/5/05 O'Leary Decl., Ex. A, Amend. 4 to Agreement and Decl. of Trust of the Teamsters Local 1205 Welfare Fund at § 3 ¶ 1. The Fund's auditors conducted an audit of the Company's payroll and other records for the period July 1, 1996 through June 30, 2003 (the "Audit Period") and issued an audit report of their findings on January 19, 2004 (the "Audit Report"). The Audit Report revealed that the Company failed to make contributions required by the Collective Bargaining Agreement ("CBA") with Local 1205 on behalf of certain employees. Therefore, plaintiffs have shown that they are entitled to the cost of the audit and shall be awarded $16,809.[7]

---

[4]This total includes $76,931.48 in interest due on the unpaid contributions reflected in the audit report, $29,108.63 in interest due on the estimated unpaid contribution amounts for November 2003 through November 2004, and $10,731.25 in interest as a result of the Companies' failure to timely pay contributions for November 2000 and January 2001 through October 2003.

[5]150 (number of days from January 1, 2005 through May 31, 2005) x 154.05 = 23,107.50.

[6]*See* 9/24/04 Feiertag Decl., Ex. I.

[7]*See* 9/24/04 Feiertag Decl., Ex. D.

Plaintiffs also claim that pursuant to the Agreements and statute, they are entitled to liquidated damages equal to 20% of the contributions. The applicable statute provides for an award of the greater of interest on the unpaid contribution or liquidated damages of up to 20% of the unpaid principal contribution. 29 U.S.C. § 1132(g)(2)(C). Here, the greater amount is the liquidated damages, and plaintiffs have demonstrated entitlement to this award. Thus, plaintiffs shall also be awarded an additional $151,308.[8]

Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to the Agreements and 29 U.S.C. § 1132(g)(1). When fixing a reasonable rate for attorneys' fees, it is appropriate for a court to consider and apply the prevailing market rates in the relevant community for similar legal work of lawyers of reasonable comparable skill, experience, and reputation. *See American Cablevision of Queens v. McGinn*, 817 F. Supp. 317, 320 (E.D.N.Y. 1993). A party seeking an award of attorneys' fees must support that request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).

As to the billing entries, judges should "use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). Plaintiffs' counsel's practice of billing on a quarter hour basis as opposed to the customary practice of billing at one-tenth increments makes it more difficult to determine the precise amounts of time spent on individual tasks or the reasonableness of those charges. The court finds that an award of

---

[8] 756,540 (amount of unpaid contributions) x 20% = 151,308.

$5,700 in attorneys' fees, a reduction of approximately 15% in the amount sought,[9] will adequately address these issues.  *See New York State Ass'n for Retarded Children*, 711 F.2d at 1146 (noting that courts have endorsed percentage cuts as a practical means of trimming fat from a fee application); *M.L. v. Board of Ed.*, 2003 U.S. Dist. LEXIS 3473, at *13-14 (S.D.N.Y. Mar. 6, 2003) (reducing total award by ten percent); *Envirosource, Inc. v. Horsehead Resource Dev. Co.*, 981 F. Supp. 876, 884 (S.D.N.Y. 1998) (reducing total number of hours by 25%); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (district court not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items") (per curiam).

Finally, plaintiffs seek an award of costs totaling $396.77.  Plaintiffs' expenses consist of court filing fees for service of process upon the defendants and other expenditures, including postage, photocopying, and messenger service.  The court finds the documentation provided is adequate and the costs sought are reimbursable.  Thus, the court recommends an award of costs in the amount of $397.

## RECOMMENDATION

For all the reasons set forth above, the undersigned recommends that plaintiffs be awarded a total of **$1,070,633**, broken down as follows:

**$756,540** in delinquent contributions;

**$139,879** in interest pursuant to the Agreements;

**$16,809** in audit fees pursuant to 502(g)(2) of ERISA;

---

[9]Plaintiffs sought $6712.50 in attorneys's fees based on the billing records of the firm Cohen, Weiss, and Simon, LLP.  *See* 9/24/04 Feiertag Decl., Ex. L.

**$151,308** as liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(B); and

**$5,700** in attorneys' fees and **$397** in costs, respectively.

### OBJECTIONS

A copy of the Report and Recommendation is being sent by the Court to plaintiffs by electronic means. Plaintiffs are directed to serve a copy of this Report and Recommendation on defendants by certified mail, and to file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
June 23, 2005

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge